FRANK ENOS AND ROSALIE ENOS GRAY *v.*
WILLIAM BERGER, LORETTA MAE SIMMONDS,
ROSALIE HENRIETTA GRAY, AUGUSTINE
FRANK ENOS, AND WELLS FARGO BANK, A
CALIFORNIA CORPORATION.

No. 4214.

June 29, 1962.

Tsukiyama, C.J., Cassidy, Lewis, Mizuha, JJ., and
Circuit Judge Hawkins in Place of
Wirtz, J., Disqualified.

OPINION OF THE COURT BY MIZUHA, J.

Plaintiffs-appellants, Frank Enos and Rosalie Enos
Gray,[1] are residents of California and claim to be the

---

[1] Apparently, Rosalie Enos Gray, named appellant in the complaint
and Rosalie Enos Thorne, named settlor in the "Trust Agreement" are
the same person, as there has been no objection raised in that regard.

2

owners, in fee simple, of certain real property situated in the County of Maui, State of Hawaii. On May 7, 1950, plaintiffs, as settlors, signed an instrument entitled "Trust Agreement," purporting to convey the real property in question to three trustees. It is alleged that thereafter, on December 21, 1951, without the consent or knowledge of the appellants, defendant William Berger, one of the three trustees and one who would also benefit under the trust,[2] caused the "Trust Agreement" to be placed on record in the Bureau of Conveyances[3] of the State of Hawaii.

Plaintiffs brought this action to remove the cloud on the title of their property caused by the recordation of the "Trust Agreement." The complaint, dated October 14, 1959, prayed for judgment declaring the defendants to have no interest in the land, holding the instrument entitled "Trust Agreement" void and cancelled, and for "other and further relief as may be just and proper." The basis for the prayer is the allegation that although the "Trust Agreement" had been signed by the plaintiffs and two of the three named trustees, it had not been accepted or signed by the Wells Fargo Bank,[4] the third trustee, and therefore was ineffective. The complaint further al-

---

[2]Paragraph (a) of article (2) of the "Trust Agreement," appended to the complaint, reads as follows:

"a. That Trustees shall pay to WILLIAM BERGER, his heirs, executors, and administrators, for services rendered, the sum of *$108,000.00 payable at rate of $500.00* every month for a period of .......................... years from date hereof of the net income of the said trust estate herein." (Emphasis added.) Bureau of Conveyances, Liber 2531, p. 205.

The emphasized portion is written in and the duration left blank. Without commenting on its legal effect, we note the following fact. Of the four persons who affixed their signatures as settlors and trustees at the end of the body of the document (Liber 2531, p. 214), only three such persons and in addition, the notary public, appear to have affixed their initials at the margin opposite the emphasized portion. The initials of Mary Enos appear to be missing.

[3]Bureau of Conveyances, Liber 2531, pp. 204-18.

[4]A California corporation then known as the Wells Fargo Bank and Union Trust Company.

leged that all parties to the purported trust had abandoned the agreement, that no trustee had taken possession of the property, and that the plaintiffs had at all times continued to enjoy the property as their own without interference.

The record shows that all named defendants to the action are residents of the State of California. It further shows that the defendants, Loretta Mae Simmonds, Rosalie Henrietta Gray and the Wells Fargo Bank have all filed acknowledgments of service of process and have disclaimed any interest in the property. No appearance or other pleadings have been filed by defendant Augustine Frank Enos, who would be a beneficiary under the "Trust Agreement," and upon whom the plaintiffs had obtained, on December 30, 1959, an order from the circuit judge authorizing service by registered mail. A similar order had been obtained by the plaintiffs upon defendant William Berger, on November 2, 1959, who, having been so served, made a special appearance by counsel for the purpose of moving to quash the service upon him and to obtain a dismissal of the action. The circuit judge, after a hearing, ordered the summons quashed and dismissed the action on June 10, 1960, basing his decision and order upon the case of *Borges* v. *Encamacao,* 20 Haw. 638 (1911), and *Sackwitz* v. *Goodwin,* 21 Haw. 84 (1912), from which order the plaintiffs appealed on September 2, 1960.[5] A motion for rehearing was denied by the circuit judge on August 5, 1960.

Despite the fact that service upon defendant William Berger had been obtained on a motion citing section 230-32 of the Revised Laws of Hawaii 1955 (hereinafter

---

[5]This order was final and hence appealable. *Cf.,* Annot., 30 A.L.R.2d 287. *Peabody* v. *Paakaua,* 24 Haw. 250 and *Rodrigues* v. *Correia,* 20 Haw. 563, are distinguishable. In each it is noted that another summons might be issued.

Revised Laws of Hawaii will be designated as R.L.H.), which provides, in part, for service by registered mail for cases at law, and despite the existence of actions to quiet title available at law under R.L.H. 1955, c. 242,[6] both parties and the circuit judge appear to have treated the case throughout as one purely in equity. We further note that no objection appears upon the record to have been raised on any theory that the statute under which service by registered mail was acquired was section 230-32. The procedure required for such service, either in equity or at law, is substantially the same. *Compare* R.L.H. 1955, § 230-32 *with* R.L.H. 1955, § 335-6.

In *Flores* v. *Maka,* 11 Haw. 512, it was held error for an action under the statute, chapter 242, to be disposed of by a decree in equity. However, under the Hawaii Rules of Civil Procedure there is but one form of action whether the case is cognizable at law or in equity. H.R.C.P., Rules 1 and 2. In the instant case, we see no reason why we should not continue to consider it as one addressed to a court of equity as argued by the parties. For the reason that we think the instant case should not have been dismissed even when considered as one purely in equity, we do not reach the question whether the action is really one for quieting title at law.

Our present decision goes only to the question of jurisdiction. We assume, but do not decide, that the action is equitable in nature. However, as observed in *Mossman* v. *Dole,* 14 Haw. 365, the remedies available under chapter 242 are narrower than those in equity. Upon remand, the true nature of the action may have to be determined. In that connection the citation of section 230-32 in the

---

[6]Remedy in equity does not affect right to pursue statutory remedy at law to quiet title. *Kahoiwai* v. *Limaeu,* 10 Haw. 507. Nor is equity jurisdiction excluded or abrogated. *Paiko* v. *Boeynaems,* 21 Haw. 196; *Borges* v. *Encamacao,* 20 Haw. 638; *Brown* v. *Brown,* 15 Haw. 308; *Ahmi* v. *Ashford,* 12 Haw. 12.

motion for service by registered mail may or may not have pertinency.

The circuit judge held that, notwithstanding amendments to the statute relating to service in equity actions, made by Acts 45 and 46 of the Session Laws of Hawaii 1921 (hereinafter Session Laws of Hawaii will be designated as S.L.H.), a circuit judge in Hawaii has no jurisdiction over a nonresident who claims an interest in real property situated within the judicial circuit in which the circuit judge sits, because under R.L.H. 1955, § 335-2, such action is in personam and requires personal service. Furthermore, he noted that these enactments did not grant "appropriate power" or any additional power to the equity court. It appears to be his conclusion that the legislature's failure to add quiet title actions and suits to remove clouds among those actions specifically enumerated in what is now R.L.H. 1955, § 335-2 (R.L.H. 1905, § 1834), was fatal to the plaintiffs' claim for relief.

We believe he erred in assuming that equitable jurisdiction in the instant case could not be extended to a nonresident defendant without some formal modification of R.L.H. 1955, § 335-2. In the first place, the decision in the *Borges* case, *supra,* held that equitable jurisdiction over quiet title actions and suits to remove cloud was already extended by the residuary language of what is now R.L.H. 1955, § 335-2(p). Referring to R.L.H. 1955, § 335-2 (R.L.H. 1905, § 1834),[7] this court clearly stated:

---

[7] When *Borges* v. *Encamacao, supra,* and *Sackwitz* v. *Goodwin, supra,* were decided, the appropriate sections dealing with the jurisdiction of circuit judges in equity were as follows:

"*Sec. 1834. Same.* The several circuit judges may hear and determine in equity, all cases hereinafter mentioned, when the parties have not a plain, adequate and complete remedy at the common law, that is to say:

* * * (Here follows an enumeration of specific actions.) * * *

"And shall have full equity jurisdiction, according to the usage and practice of courts of equity in all other cases where there is

# 6

"Suits to quiet title to real estate, to remove clouds, or to cancel instruments are not included in the enumeration referred to, but there is no doubt that under the clause above quoted the equitable jurisdiction of the circuit judges does extend to such matters." *Borges* v. *Encamacao, supra* at 641.

That decision further held "That the statute [R.L.H. 1905, § 1840] providing for constructive or substituted service upon absent defendants, being a general one, is operative only in so far as equity has jurisdiction according to the general principles of equity to proceed in matters in which the decree may operate directly upon property, as, for example, suits to foreclose mortgages or liens, or to partition real estate, or suits involving attachments. And that while power may be conferred by statute upon a court of equity to annul a deed and to remove a cloud, or establish a title by the mere force of its decree as to

not a plain, adequate and complete remedy at law." R.L.H. 1905, § 1834.

This section, now R.L.H. 1955, § 335-2, has remained unchanged.

"*Sec. 1838.* *Sworn petition in what cases.* All applications for the foreclosure of any mortgage of real or personal property; for the abatement of nuisance, public or private; for the annulment of charters and other corporate rights, or for restraint or prohibition in the exercise thereof; for proclamation by scire facias; for sequestration of property upon legal or equitable grounds; for divorces and separations; for the affiliation of bastards; for the partition and division of real property; for the admeasurement of dower; for inquiries of lunacy or insanity; or for inquiries de ventre inspiciendo to determine the right of property, shall be by sworn petition addressed to some judge having jurisdiction thereof." R.L.H. 1905, § 1838.

"*Sec. 1840. Service of process.* When process is issued in any such case, it shall be served by delivery of a copy of the petition and of the summons to the defendants, or in case they cannot be found, by leaving such copy with some one upon the premises involved in the controversy, or in such other manner as the judge may direct. The officer charged with service of the process shall also, if so directed by the judge, publish in a newspaper or newspapers suitable for the advertisement of notices of judicial proceedings, a notice of such suit or proceeding, calling upon all persons interested to appear and show cause against it, at the time and place appointed for the hearing." R.L.H. 1905, § 1840.

property within its jurisdiction, such power has not been conferred upon the circuit judges sitting as courts of equity in this Territory." *Borges* v. *Encamacao, supra* at 648. However, it did point out, quoting from 1 Pomeroy, *Equity Jurisprudence,* § 170 (3d ed.), the following:

> "* * * 'Although it was said in the earliest days of the jurisdiction of chancery, and has been constantly repeated by writers and judges to the present time, that equitable remedies act wholly on the person, *in personam,* and not upon property, *in rem,* the exact meaning and limits of this rule must be accurately understood, or else it will be very misleading, and will entirely misrepresent the theory of the equity remedial system. * * * This ancient quality in the operation of equitable remedies has been greatly modified by various statutes in the United States, which, in some instances, provide that a decree establishing an estate, interest or right of property in the plaintiff shall execute itself, shall be of itself a muniment of title, by divesting the defendant of the interest and vesting the same in the plaintiff, without any conveyance or other instrument of transfer.' " Quoted in *Borges* v. *Encamacao, supra* at 642.

Applying the rule established in the *Borges* case, *supra,* it was held in *Sackwitz* v. *Goodwin, supra,* that constructive service on a nonresident defendant was insufficient in an action seeking to establish a trust over real property and to have its title adjudicated. There again, the court emphasized the "absence of appropriate legislation." *Sackwitz* v. *Goodwin, supra* at 86.

The plaintiffs urge that appropriate legislation has been enacted subsequent to the *Borges* and *Sackwitz* cases, *supra,* which extends equitable jurisdiction to actions and parties of the nature involved in the instant case.

By Act 45 of S.L.H. 1921, our Territorial legislature amended R.L.H. 1905, § 1838 (R.L.H. 1915, § 2478), by adding the language, "or for the determination of or adjudication as to title to real property situated within this territory, interest therein, or right thereto, whether by way of suit for specific performance, or otherwise," to those already enumerated as cases in which sworn petitions must be filed.

The Senate Judiciary Committee's report on this bill, H.B. 28, being Standing Committee Report No. 141, Senate Journal, Regular Session 1921 at 381, stated that the purpose of the bill was "to extend the provisions of section 2478 [R.L.H. 1915] requiring that petitions in certain cases be under oath so as to include petitions for the determination of or adjudiction as to the title to real property. * * *" This section was later amended in 1941 by Act 258, S.L.H. 1941. It now appears as R.L.H. 1955, § 335-4.

At the same time in 1921, the Territorial legislature specifically amended the provisions for constructive or substituted service. This was done by Act 46, S.L.H. 1921, which, among other changes, added the following language, to R.L.H. 1915, § 2480:

"When process is issued in any proceeding in equity in any matter of the character referred to in Section 2478 [R.L.H. 1905, § 1838] hereof, or *in any other matter involving or concerning any tangible property, whether real or personal, situated in the Territory of Hawaii, or the right to the possession thereof or title thereto* * * *." (Emphasis added.)

Act 46, S.L.H. 1921, is now part of R.L.H. 1955, § 335-6, which by the amendment by section 3 of Act 258, S.L.H. 1941, provides for service by publication or by registered mail upon, among others, nonresident respondents "having or who might have any legal or equi-

table estate, right or interest, vested or contingent, in the subject-matter of the proceeding or being or who might be otherwise concerned in the proceeding * * *," subject however to the further provision that this "shall not apply * * * in any proceedings to which this section could not constitutionally be applied under the Constitution of the United States."

In *Borges* v. *Encamacao, supra* at 648, this court stated that the statute providing for constructive service or substituted service upon absent defendants "being a general one, is operative only in so far as equity has jurisdiction according to the general principles of equity to proceed in matters in which the decree may operate directly upon property * * *." But it also stated on the same page, that such power "may be conferred by statute upon a court of equity to annul a deed and to remove a cloud, or establish a title by the mere force of its decree as to property within its jurisdiction * * *." Moreover, it acknowledged the validity of such enactments stating:

"The effect of a statute like those involved in *Arndt* v. *Griggs* [134 U.S. 316] and in *Bennett* v. *Fenton* [41 Fed. 283] is to constitute a proceeding brought under the operation of its provisions in its nature a proceeding *in rem.* The decree in such a proceeding can affect only property within the jurisdiction of the court, but as to such property it is substantially a proceeding *in rem* within the broader sense of that term as it was defined in *Pennoyer* v. *Neff,* 95 U.S. 714, 734. * * *" *Borges* v. *Encamacao, supra* at 645-46.

See also *Holland* v. *Challen,* 110 U.S. 15; *Roller* v. *Holly,* 76 U.S. 398; *Wagner* v. *Wagner,* 293 F.2d 533 (D.C. Cir. 1961).

The precise question before us is, therefore, whether Acts 45 and 46 aforesaid taken together were sufficient

to extend jurisdiction in quiet title actions in equity to interests of nonresident defendants in properties situated in this State by obtaining substituted or constructive service over them. That these enactments were intended to be read together is obvious and requires no comment. That Act 46 purported to make other than "personal service" effective in those instances covered by what was then R.L.H. 1915, § 2478, as amended by Act 45, has already been discussed. The narrow question is whether Acts 45 and 46 supplied the touchstone which previously was lacking, so that it can no longer be said that the statute is "a general one" which depends upon "general principles of equity" as to "matters in which the decree may operate directly upon property." We think that such is the case. That the legislature so intended is inferable from the following partial comment of the Senate Judiciary Committee with reference to Act 46:

"The object of this bill is to make more definite and certain the provisions of our statutes with reference to service of process by publication, and to extend the provisions of the section sought to be amended *to include a character of cases to which the said section has not been applicable. * * *"* Senate Journal, Regular Session 1921 at 383. (Emphasis added.)

Thus, we hold that the language of Acts 45 and 46, S.L.H. 1921, was intended to include actions of the nature involved in the instant litigation, that service upon the nonresident defendant, William Berger, by registered mail was sufficient to give the court equitable jurisdiction over his interest in the real property situated in the County of Maui, and that the circuit judge is authorized to exercise the jurisdiction which, as recognized in *Borges* v. *Encamacao, supra,* may be conferred by statute with respect to property within the jurisdiction of the court.

One further facet of the instant case must be explored.

It involves the question whether subsequent amendments to R.L.H. 1915, § 2478, as amended by Act 45, have any effect on the plaintiffs' position in the instant case. More particularly, attention is directed to S.L.H. 1941, c. 258, § 2, which completely modified R.L.H. 1915, § 2478, as amended by Act 45 so that there do not now appear the enumerations previously there found. It may be conjectured that such change was intended to be a nullification of the effect of the enactment accomplished by Act 45. We think otherwise for the following reasons. We note that the total effect of S.L.H. 1941, c. 258, was to liberalize equity procedure and clarify methods by which the interests of persons in various categories, such as additional parties, unknown parties, members of a class, and others, including nonresidents, may be fairly reached. Thus, the Senate Judiciary Committee, commenting on that entire chapter, stated:

"This bill is designed to clarify certain aspects of equitable procedure. In the main, it requires all suits in equity to be brought by sworn pleading instead of limiting the proceedings to be so commenced to certain causes. It provides who may become parties, how persons interested may be made parties, how service may be made in the numerous different circumstances which may arise in equity cases dealing with a variety of legal and equitable interests in property, and makes appropriate provision for class representation, and for service.

"The bill has had the very careful consideration of able members of the bar, largely engaged in the type of work governed by this bill, both prior and subsequent to its drafting." Senate Journal, Regular Session 1941 at 671.

Thus, the specific enumeration in R.L.H. 1915, § 2478 of types of equity suits was eliminated because it was in-

tended that all equity suits be commenced by sworn pleading. The 1941 amendment of the section that previously had been R.L.H. 1915, § 2478, substituted new material, now R.L.H. 1955, § 335-4. This new material was designed to make parties to equity proceedings concerning property within the jurisdiction of the court all persons "interested in any manner or who may claim any interest in any such property, whose names are unknown to the petitioner * * *." Section 2480, R.L.H. 1915, relating to service, now R.L.H. 1955, § 335-6, also was broadened. Properly construed, the changes made by S.L.H. 1941, c. 258, § 2, do not extinguish equity jurisdiction to act in rem. The legislative intent was to broaden such jurisdiction so far as the Constitution permits. See R.L.H. 1955, § 335-6(e).

Reversed and remanded for further proceedings.

*R. G. Dodge* (*Heen, Kai & Dodge*) for appellants, Frank Enos and Rosalie Enos Gray.

*Morris P. Skinner* (*Skinner, Bennett & Ornelles*) for appellee, William Berger.

*Earl S. Robinson* (*Fong, Miho, Choy & Robinson* on the briefs) for ten petitioners.

*Kam Hee Ho,* petitioner, in propria persona.